# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:06CV9

| | |
|---|---|
| SANDRA J. BASS, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | **Memorandum and Order** |
| ) | |
| JOANNE B. BARNHART, ) | |
| Commissioner, Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff Sandra J. Bass' ("Plaintiff") "Motion for Summary Judgment" (Document # 11) and "Plaintiff's Memorandum in Support of Motion for Summary Judgment" (Document # 12), filed July 3, 2006, and the "Motion for Summary Judgment (Document # 13) and "Memorandum in Support ..." (Document # 14), filed July 27, 2006 by Defendant. This matter is now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned finds that the Commissioner's decision to deny Plaintiff Social Security disability benefits was decided under the correct legal standard and is supported by substantial evidence. Accordingly, the undersigned will <u>deny</u> Plaintiff's Motion for Summary Judgment, <u>grant</u> the Commissioner's Motion for Summary Judgment, and <u>affirm</u> the Commissioner's decision.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff is 45 years old and has a high school education. (R. at 18.) She is unmarried and lives with a roommate in Alexander County, NC. (R. at 24, 53; Compl. ¶1) Plaintiff has previous

work experience as a security guard, supervisor/laborer for a furniture factory, and warehouse shipping/receiving clerk. (R. at 18.) Plaintiff has not been employed since May 2001. (R. at 19.) However, Plaintiff has continued to look for work. (Id.) In May 2003, Plaintiff participated in the testing required to qualify for a position as a state corrections officer but was unable to pass the reading portion of the test. (R. at 22.)

On May 27, 2003, Plaintiff applied for a period of disability and Social Security disability insurance benefits, alleging that she became disabled on May 17, 2001 due to problems with her left hand and tarsal tunnel decompression in her left foot. (Id.) Plaintiff's claim was denied initially and then again on reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held April 21, 2005. On August 18, 2005, the ALJ issued an opinion denying Plaintiff's claim.

Subsequently, Plaintiff filed a Request for Review of Hearing Decision. On November 19, 2005, the Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner.

Plaintiff filed this action on January 18, 2006, and the parties' cross-motions for summary judgment are now ripe for this Court's consideration.

## II. FINAL DECISION OF THE ADMINISTRATIVE LAW JUDGE

The question before the ALJ was whether at any time after May 17, 2001 (the alleged disability onset date), Plaintiff became "disabled" as that term of art is defined for Social Security

purposes.[1]  The ALJ considered the evidence and concluded in his written opinion that Plaintiff suffers from (1) complex regional pain syndrome Type 1, (2) status-post left tarsal tunnel syndrome surgical release, (3) thoracic outlet syndrome of the left upper extremity possibly secondary to lipoma, (4) status-post reconstruction of the first dorsal compartment of the left wrist with palmaris longus tendon graft, (5) status-post remote right carpal tunnel release/median nerve compression at the elbow and proximal forearm, (6) peripheral ulnar neuropathy of right upper extremity with wrist/elbow entrapment, (7) possible ganglion at the volar aspect of MP joint of left hand, (8) degenerative disc disease, (9) flat back syndrome, and (10) possible cutaneous nerve lesion of the lower back with radiation to the lateral aspect of the thigh.  (R. at 22-23.)  While these impairments were "severe" within the regulatory meaning, the ALJ found that no impairment or combination of impairments was severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  (R. at 23.)

The ALJ found that Plaintiff has the residual functional capacity to perform "light work," including the ability to do sedentary work, which requires lifting no more than twenty pounds occasionally or fifteen pounds regularly.  (R. at 26.)  As a result, the ALJ concluded that Plaintiff would be able to return to her previous employment as a security guard.  (R. at 25.)  Additionally, based upon her residual functional capacity, the ALJ found that Plaintiff could perform work which

---

[1] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ....

Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

exists in significant numbers in the national economy. (Id.) Accordingly, the ALJ concluded that Plaintiff was not disabled as defined for Social Security purposes.

### III. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), the Fourth Circuit defined "substantial evidence" as

> being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

Id. (quoting Perales, 402 U.S. at 401).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion.") Indeed, so long as the Commissioner's

decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. DISCUSSION OF PLAINTIFF'S CLAIMS

### A. The ALJ Evaluated Residual Functional Capacity Using the Correct Legal Standard

Plaintiff contends that the ALJ gave improper weight to the medical opinion of Dr. Burrows, the treating physician, when determining her residual functional capacity ("RFC"). (Pl.'s Mem. Supp. at 7.) Although the final responsibility for deciding the issue of RFC is reserved to the Commissioner, the ALJ should consider opinions from medical sources, medical findings, and other medical evidence when making this determination. 20 C.F.R. § 404.1527(e).

In determining Plaintiff's RFC, the ALJ expressly stated that "after a careful review of the evidence, I defer to the treating physician's opinion and, therefore, accord great weight to his assessment." (R. at 24.) Plaintiff argues that this statement indicates that the ALJ gave special significance to the doctor's opinion and did not decide the issue of RFC himself as required. However, the record shows that the ALJ considered all relevant information when determining Plaintiff's RFC. (R. at 24-25.) In the paragraph discussing the treating physician's assessment, the ALJ also described the other medical evidence and evaluated its credibility.[2] (R. at 24.) In this context, the ALJ's statement that he gave "great weight" to the assessment of the treating physician is the ALJ's determination of the credibility of this assessment; it does not indicate that the ALJ abdicated his independent decision-making responsibility. In addition, the ALJ went on to consider

---

[2] In fact, the other medical opinions, which Plaintiff claims the ALJ "dismissed," found that Plaintiff had an RFC for "medium" and "light-medium" work. (R. at 24, 261.) Thus, the other medical sources evaluated Plaintiff's RFC at a higher level than either the ALJ or the treating physician whom Plaintiff argues the ALJ unduly relied upon.

Plaintiff's own testimony about her daily functioning as well as Plaintiff's vocational rehabilitation record before reaching his conclusion regarding Plaintiff's RFC. (R. at 24-25.) Thus, the record shows that the ALJ carefully considered all relevant information when determining Plaintiff's RFC and did not give undue weight to any one source.

Plaintiff also argues that the ALJ failed to provide a proper explanation for his assessment of Plaintiff's RFC. An ALJ's assessment of a claimant's RFC "must include a narrative discussion describing how the evidence supports each conclusion." SSR 96-8p. Despite Plaintiff's contention, in this case, the ALJ discussed the evidence supporting his determination of Plaintiff's RFC. As described above, the ALJ evaluated all of the relevant medical source opinions, Plaintiff's self-reported daily functioning, and Plaintiff's vocational rehabilitation records before making his determination of Plaintiff's RFC. (R. at 24-25.) Furthermore, for each source the ALJ described the specific facts that supported his determination. (Id.) The ALJ also included in the record his findings on the credibility or relevance of the sources. (Id.) Therefore, the ALJ fulfilled his duty to provide a narrative explanation for his assessment of Plaintiff's RFC.

The ALJ's discussion of the evidence supporting his conclusion, described above, and the record itself show that substantial evidence supports the ALJ's determination of Plaintiff's RFC. Based on the foregoing, this court finds that the ALJ evaluated Plaintiff's RFC using the correct legal standard, that the ALJ provided a proper explanation of his assessment, and that the ALJ's decision was supported by substantial evidence.

### B. The ALJ Correctly Determined Plaintiff's Ability to Perform Past Relevant Work

Plaintiff next asserts that the ALJ failed to properly evaluate Plaintiff's ability to perform her past relevant work.[3] SSR 82-62 states:

> In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact: (1) A finding of fact as to the individual's RFC. (2) A finding of fact as to the physical and mental demands of the past job/occupation. (3) A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

In the present case, the ALJ has clearly made a finding of fact as to Plaintiff's RFC. (R. at 25.) The ALJ also found that Plaintiff's RFC for "light work" would permit her to return to her past duties as a security guard, in part because the *Dictionary of Occupational Titles* ("*DOT*") classifies this position as requiring only light work activity. (Id.) Plaintiff argues that the ALJ erred in relying on the *DOT* classification to determine the physical and mental demands of Plaintiff's past job. Plaintiff contends that the ALJ was required to find additional, specific facts relating to Plaintiff's actual past experiences as a security officer. In determining the physical and mental demands of a claimant's past job, the ALJ may rely on the general job categories in the *Dictionary of Occupational Titles* ("*DOT*"). DeLoatche v. Heckler, 715 F.2d 148, 151 (4th Cir. 1983). If a claimant believes that this description is not accurate, the burden falls to the claimant to demonstrate that her occupational duties were different from those listed in the *DOT*. Id.

---

[3] At the outset, the court notes that this argument is largely irrelevant since the ALJ also found that Plaintiff, with her RFC, was capable of performing "substantial numbers of jobs in the national economy." (R. at 25.) (citing 20 C.F.R. § 404.1567(b)) Since Plaintiff nowhere challenges this finding, and since this court has found that the ALJ's determination of RFC was made under the correct legal standards and was supported by substantial evidence, Plaintiff's disability claim would still fail regardless of the court's decision on this issue.

Here, Plaintiff fails to offer evidence showing that her duties as a security officer were different from the general duties of a security officer described in the *DOT* or that the *DOT* description of a security guard position is inaccurate in any way. Since Plaintiff fails to meet her burden, the ALJ's reliance on the *DOT* definition was permissible.

The ALJ's findings regarding Plaintiff's ability to perform her past relevant work are supported by substantial evidence. As discussed supra at 5-6, the ALJ's decision on Plaintiff's residual functional capacity is supported by a synthesis of the medical source opinions, Plaintiff's own testimony regarding her daily functioning, and evidence from Plaintiff's vocational rehabilitation records. The ALJ's findings of fact concerning the past physical and mental demands of Plaintiff's previous job as a security guard are supported by the *DOT* and have not been contradicted by any evidence put forward by the Plaintiff.

Finally, since Plaintiff has an RFC for light work and since the *DOT* defines a security guard position as requiring only light work, the ALJ found that Plaintiff could return to her previous job. In addition to the *DOT* definition, this fact is supported in the record by Plaintiff's vocational rehabilitation progress report, which relates that in 2003 Plaintiff tested for a corrections officer position and was turned down not due to any physical disability but because of her failure to pass the reading portion of the test. (R. at 354.) Furthermore, the vocational counselor noted that Plaintiff "plans to continue her efforts to obtain employment as a corrections officer, [and] is pursuing private security guard positions as well." ( Id.) The counselor also summarized Plaintiff's medical status and then stated that he intended to provide Plaintiff with "additional security job leads as they become available." (R. at 355.) Thus, the record shows that the vocational counselor believed that Plaintiff was capable of performing her former duties as a security guard. In

conjunction with the *DOT* definition, this is substantial evidence supporting the ALJ's determination.

The ALJ's assessment of Plaintiff's ability to perform her past relevant work as a security guard included all necessary findings of fact, and these findings of fact are supported by substantial evidence. Therefore, the ALJ's determination is valid and the Commissioner's decision on this issue is affirmed.

## IV. CONCLUSION

For the reasons stated above, the undersigned concludes that substantial evidence supports the ALJ's findings and that the ALJ's determinations were made under the correct legal standards.

**IT IS HEREBY ORDERED THAT:**

1) Plaintiff's "Motion for Summary Judgment"(Document #11) is **DENIED**; Defendant's "Motion for Summary Judgment (Document #13) is **GRANTED**; and the Commissioner's decision is **AFFIRMED**.

2) The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

Signed: July 27, 2007

Richard L. Voorhees
United States District Judge